The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, be seated please. All right, next case we'll hear this morning is Allen v. Stein and Mr. Brode. Good morning, Your Honors, and may it please the Court. My name is Nick Brode. I'm with the North Carolina Department of Justice, appearing on behalf of the defendants. This case should have ended five years ago. Five years ago, the United States Supreme Court unanimously affirmed this Court's decision holding that North Carolina has sovereign immunity from Allen's copyright claims. Back in the district court, Allen then voluntarily dismissed, with prejudice, his remaining claim against the one defendant left in this case. That should have marked the conclusion of this litigation. Yet the district court below reopened the case and allowed Allen to file a second amended complaint asserting a claim under United States against Georgia, a claim that Allen could have brought all the way back in December 2015 when he originally filed this lawsuit. The district court's decision to reopen the case and allow Allen to file an amended pleading was error. The district court also erred in holding that Allen plausibly alleged a violation of the Copyright Act that also violates due process. For either reason, this Court should reverse. There are two orders that are before the Court. They're distinct but closely related. There's the district court's 2021 order reopening the case and allowing Allen to amend, and then there's the district's ---- Can you explain to me how we have jurisdiction over that first order? Your Honor, the court has jurisdiction over the 21 order because the district court in its 2024 order denied in part our motion to dismiss based on sovereign immunity. That is a 1291 final decision. I think everyone agrees that we were allowed to immediately appeal. It's not a final decision, is it? I thought it was we ---- it's a decision over the sovereign immunity decision is a decision over which we have jurisdiction, I thought, under the collateral order doctrine. Your Honor, the 2024 order is a final decision under the collateral order doctrine. Okay. That allows us to be here. But we have held that even when we have ---- when we can hear an interlocutory appeal of the denial of sovereign immunity, that doesn't mean we have pendant jurisdiction over other issues in the case. Your Honor, I think the 2021 order as a prior earlier procedural order that led up to the denial of our motion to dismiss merged into the 2024 order. So I don't think this is a pendant appellate jurisdiction kind of a situation. We're not here asking you to review, for example, another claim that we couldn't have otherwise appealed or another defense like personal jurisdiction or statute limitations or state law claims that wouldn't otherwise be properly before the court. The 2021 order is an earlier in time procedural ruling leading up to sort of inevitably the 2024 order. The reason the 2024 order exists is because in 2021, the district court said, I'm going to reopen the case and permit Mr. Allen to file a pleading that would pierce the State's sovereign immunity. And so in that sense, I think the 21 order and the 24 order really are sort of functionally one big ball of wax here that allows the court to review both orders at the same time. Because, again, I don't think there's any dispute that the 2024 order is properly here. It is a final decision. And as the Supreme Court explained in Puerto Rico Aqueduct, it's a final decision because it conclusively resolves a very, very important issue for the State of North Carolina. It holds that we are going to have to face suit. And sovereign immunity is all about an immunity from suit, not having to face the burdens of litigation. And it would seem odd, I think, given the important interests that are at play here that are recognized in the district court's 2024 order, to say, well, we can't review sort of the logically antecedent question of whether Mr. Allen could have even asserted a Georgia claim in the first place. That's what allowed him to do the 2021 order authorized proceeding on the Georgia claim. That's correct. And that's the seed of what you say is the error that got us here. That's right. That's right. The final error. That's right. That's right. The 2021 order, that's exactly right. It's the seed. But you're saying the 2021 order should have never been entered. That's right. That's right. The 2021 order should have never been entered. But that was an erroneous decision. That was an erroneous decision. It was an erroneous decision because the district court reopened this case under Rule 54b, even though the case was over. So Mr. Allen himself in the district court, when he sought to reopen the case, filed a motion under Rule 60b-6. This is at JA page 58. But the district court looked at that and said, no, I'm going to construe this as a Rule 54b motion instead. And as best I can tell, the district court reached that conclusion because it thought, well, there's not a piece of paper in this record that says final judgment. And there is no such piece of paper on the docket that says final judgment. But the reason there's not that piece of paper is because Mr. Allen voluntarily dismissed, with prejudice, under Civil Rule 41A1A Romanet II, his remaining claims. And that piece of paper, the minute that piece of paper hit the docket, the case was over. There was no claim against any defendant left. I mean, does it matter, in your view, which rule the question is considered under? I mean, do you think it could have been properly granted under 54? I do not think this could have been properly granted under Rule 54, given all of the very unusual features of this case and the prejudice to the defendants from having to face for the first time a claim that Mr. Allen could have originally pled when he filed the lawsuit. But I do think the number matters quite a lot, because under Rule 60b-6, of course, Mr. Allen would have had to have shown extraordinary circumstances. And I don't think Mr. Allen has come anywhere close to showing circumstances of that kind. I mean, the district court reasoned that this court and the Supreme Court had passed on this Georgia issue. But this Court, in its 2018 decision, said nothing about Georgia. It cited Georgia sort of in passing. The U.S. Supreme Court did not. In what case? When did we not say anything about it? In your 2018 decision. The one that went to the Supreme Court. The one that the Supreme Court unanimously did. We cited it in there. You cited it. You cited it. But you did not substantively discuss a Georgia claim. And Mr. Allen at the United States Supreme Court conceded that he did not bring a Georgia claim. This is at page 32 of the oral argument transcript before the United States Supreme Court. He acknowledged that there was no Georgia claim. Was that ruling in 2021 reviewed for abuse of discretion or de novo? It is reviewed for abuse of discretion. But because the district judge committed an error of law, it is categorically an abuse of discretion. What was the error of law you're alleging? I'm alleging that the district court erred because it applied the wrong civil rule. 54. Right. Instead of 60? Yes. Yes. And I think in some of the others, it would be a clerical error. No, Your Honor. I think the sharp difference in the relevant standard under Rule 54b and Rule 60b means that this is much more significant than just a clerical error. Because, again, Rule 60b requires extraordinary circumstances, and I don't think we're anywhere close to that. What's the standard under 54b? So Rule 54b is a more forgiving standard for interlocutory, for revising interlocutory judgments. It permits the district court to revise interlocutory judgments for things like newly discovered evidence, a change in decisional law, or some other important issue of justice. Which of those would be implicated here? Exactly. I mean, I think I can win under Rule 54b even if you were to assume that that rule were to apply. I think even if Rule 54b applied, this would still be an abuse of discretion because, again, Mr. Allen could have raised a Georgia claim back in 2015. In 2015, Georgia had been on the books for 10 years. It was a fully available precedent of the United States Supreme Court. There's clearly no new law or fact. I mean. That's right. So it would have to be that third bucket? I suppose. I think that's right. I think the only way under, if we're accepting 54b as the standard, the only way Mr. Allen could have proceeded was this third sort of amorphous bucket about, you know, interests of justice. And, again, I just don't see anything on this record to indicate that the district court could have acted within its discretion to revive the case under that rule. Because as I was saying, you know. Could you say he couldn't have exercised his discretion to reopen the case, period? That's right. There is no rule. There's no provision that would warrant this in these circumstances. Is that your position? That is my position. That's the position of the State of North Carolina. Yes, Your Honor. Yes, Your Honor. This case should have been over. It seems to me your argument is more persuasive to go that route that Judge King just asked, because Allen did file a Rule 60 motion, and the Court treated it as a Rule 54. And he asked for a 60 motion. That's right. And your argument is that that has a higher degree, which he couldn't satisfy.  But you also argue that the Court lowered the standard by using 54. That's right. At Rule 54. And under that standard, you still should not have had a reopened case. That's correct. That's correct. Yes, that's correct. And, I mean, again, nothing had changed. In disregarding the rule citations, what's your best argument that this shouldn't have happened, that there was an abuse of discretion? Time? It's the prejudice to us from the passage of time. It's a prejudice. Well, I don't know how you'd be prejudiced. How would you be prejudiced? Well, so I think there's a number of ways. Is the State of North Carolina to be prejudiced? So, I mean, we defended this case all the way up to the United States Supreme Court and won a unanimous victory. It went through the whole process that's available. Yes. It went through all of it. And the Supreme Court, that we, Judge Demeyer, paid opinion, and the Supreme Court recognized it, and that should be the end of it. Yes. That's North Carolina's position. Yes. Yes. That's our position. And, of course, I mean, you know, I think it's worth maybe putting a little bit of a higher Basically, the argument comes down to the law generally doesn't like a second bite. Exactly. And this is a second bite because there's no new developments. That's right. That's right. It's a do-over. It's a request for a do-over, and there is no compelling reason to give Mr. Allen a do-over on these facts. Georgia has been around since 2006. It could have been asserted all the way back when he originally filed his complaint. To make a, to find a, an abrogation under 14th Amendment after the Supreme Court went through the statute with respect to the Copyright Act would be a strange bird, I would think. Justice Kagan would say, didn't you hear us? Well, I don't know. The Court might. I mean, I agree with you that it's an unusual, we're in an unusual procedural posture, and I think that is a result of errors that the District Court made in how it applied Rule 54B, even if you accept that Rule 54B is the proper standard. Because, again, I think it is worth underscoring that Georgia was never in this case. It really was never cited to this Court in the briefs when this case was here last time. Well, you'd do better if it was cited, and it was, we did cite it, but you'd do better because the basic, the point is it was around, people knew around it.  If they had that theory, they could have raised it. That's right. It's a, I don't know if a case has ever decided a copyright or a patent right is, is abrogated under the 14th Amendment. There's, there's very limited precedent on a Georgia sort of as-applied abrogation theory in the copyright context. And I think that maybe is all the more reason to be attentive to the procedural irregularities here. I mean, you know, Georgia, as best I can tell, was, was substantively discussed for the first time in, I think, an amicus brief. What was your theory of why 54B? Is that because it's too late? It's inappropriately applied because it was too late or what? I think if you're proceeding under Rule 54B, my argument would be there hasn't been any change in the evidence. There's no new facts. Well, you're addressing the substance. I mean, I, the motion was filed, was, was it timely? The judgment was August 17. The Court, when, when did the Court address 54B? What, what date? Well, the Court's 2021 order addresses Mr. Allen's motion to reconsider under Rule 54B. Mr. Allen filed that motion in September of 2020. I thought there was a motion under Rule 60. Right, right. He, Mr. Allen's. He filed, he filed it in September under Rule 60. Under Rule 60, that's correct. But my point is, if we're looking at the procedure, the Court applied it. Well, I don't know. What's the theory? What's the procedural problem? I can't, I guess it's timely if you consider the motion, the 60B motion to be a 54B motion. Right, right. But, all right. Right. I, I think that's how you would have to think about it, is that, no, the 60B motion in effect was 54B. So procedurally, there's no real issue. The issue is, you're arguing procedurally, the issue is that they asked for a standard that couldn't be satisfied, so the Court changed the rule and gave them an easier standard. That's right. That's right. The Court gave Mr. Allen a do-over to assert a claim that he could have raised 10 years ago. And now that we're, you know, 10 years after the filing of the original complaint, you know, five years after the U.S. Supreme Court decision, we're 12 years now away from the settlement agreement in 2013 that gave rise to a lot of this litigation. Witnesses move, memories fade. We defended this case all the way up to the United States Supreme Court. There's clear prejudice to us from continuing a case that should have ended. Where were you in 2017? Where was I in 2017? Were you at the State? I was not. No. This was even before your birth, before the State. Yeah, it was a long time ago. And, I mean, I don't remember what I was doing in 2015 or 2013 when the settlement agreement was issued. Did you litigate this thing in 2021 to 2024? Or did you just come up here on appeal? I'm involved in the appeal. Yes, Your Honor. You're the appeal guy. Yes, Your Honor. All right. Anything further? I have nothing further. All right. Thank you so much. We'll hear from Mr. Adler. Thank you, and may it please the Court. My name is Adam Adler, and I represent Appellee's Rick Allen and Nautilus Production. This appeal is about complex questions with simple answers. In my argument today, I'd like to highlight three issues that simplify the matters in dispute and provide the best path to resolving this appeal. First, the Court lacks jurisdiction over Defendant's Rule 60 procedural issue. This Court already held that the challenged order isn't final and doesn't fit under the collateral order doctrine. Defendants rely on the merger doctrine for jurisdiction, but that fails since interlocutory orders don't merge into each other. Second, on the merits of the procedural argument, this isn't a do-over. Georgia was in the case from the start, and the Court applied, the District Court applied Rule 60, Rule 54, and Rule 15, and found that plaintiffs' requested relief for reconsideration satisfied all three, the requirements of all three rules. Plus, there were new facts that took place between the Supreme Court decision and the prior appeal that motivated and justified filing a Second Amendment complaint. And then the third simplification is on the merits. The Court doesn't need to resolve the dispute over whether copyright willfulness is required for a due process claim, since the complaint alleges willfulness and so survives regardless of which standard applies. Turning to the first issue, jurisdiction, the Court lacks appellate jurisdiction over this procedural argument. Appellate jurisdiction is normally limited to final orders. There are a few exceptions, but those are narrow. The narrow exceptions include collateral orders, which the primary sovereign immunity appeal falls under, and pendant jurisdiction, for orders that are inextricably intertwined with another issue properly before the Court. What I think my friend on the other side referred to as the same ball of wax. That's what pendant jurisdiction is for, issues that can't be separated. Defendant's procedural challenge doesn't fit into either of those categories. The ordered issue isn't final. And in fact, it's as far from final as you can get, since it allowed the case to continue and allowed plaintiffs to file an amended complaint. It's not a collateral order, since it doesn't relate to an important issue or one that can't meaningfully be reviewed later. And this Court considered that exact issue, whether it's a collateral order or whether So all that remains is a nontraditional route. Defendants advance a new theory for jurisdiction. They argue that the challenged order merged into the interlocutory collateral order on sovereign immunity. But the merger doctrine doesn't apply to collateral orders. Appellant's cases say the same. Their cases discuss the applicability of merger in connections with traditional final judgments. 68th Street, Jenkins, Gowan, they all say the same. And no case supports the proposition that interlocutory orders merge into collateral orders. And this makes sense. The merger doctrine is broad. Any decision on the road to a final judgment that plays into and feeds into the final judgment gets merged into the appeal and so doesn't need to be separately listed in the notice of appeal. If that same rule applied to interlocutory orders, then appeals that are currently confined to a single issue would balloon to encompass all the orders in the case up until that time. This means that every appeal on a qualified or sovereign immunity issue would also include challenge to scheduling orders, discovery disputes, and intermediate case management decisions. And this case proves the point. Defendants are challenging an order granting plaintiff leave to file an amended complaint. That's exactly the kind of issue that shouldn't be the subject of an interlocutory appeal. Pending jurisdiction proves the point. Well, you know, I hear you. And your points are maybe directly related to what you're citing. But what we have here is a copyright suit that was filed against the State, and sovereign immunity was asserted, denying your claim against the State. And there was an argument that there was abrogation under the Act, Patent Act. Copyright Act. And we found the State immune from copyright. The Supreme Court affirmed almost for the same reasoning and sent it back. The only remaining party, the Friends, they settled, and that ended the case. So basically, the case was started as a copyright case, and it was ended with an assertion of sovereign immunity. Now, you're basically coming in and challenging the ruling that you can't sue the State. And you say, oh, I've got a new theory. The new theory is under Georgia. There's something wrong with that. Number one is, first, you could have raised it earlier. But second, it flies in the face of the fact that both our court and the Supreme Court held the State immune from copyright. And you're now trying to find a theory to get around both courts. Now, maybe the courts didn't decide that issue directly, but they decided the issue. They said the State is immune. And so your whole process is really seeking a review of the August 17, 2020, judgment that ended the case on — because you now have figured out, well, maybe the Supreme Court really didn't decide Georgia, and maybe the Fourth Circuit didn't decide Georgia, even though we had a Georgia claim. We're going to try that one. I mean, that's almost like claim splitting or second chance or, you know, all the doctrines that we have to end endless litigation. And so when we take an appeal from this, and you're saying we don't have jurisdiction, at this point, we really ought to be looking at the bigger picture of protecting the judgment that was entered in 2020, it seems to me. Right. So I want to address your concern on that. First, I'll note with respect to jurisdiction, that doesn't fit under the merger doctrine. So the question for appellate jurisdiction is more academic. And does the court have jurisdiction? Merger doesn't provide it. Your concerns go more to the merits of the State's procedural argument. We're going to the fact that we have a final judgment and that we told you that the State was immune from its copyright claims. Right. Now, you're saying, oh, but we have a copyright claim, which you never asserted before, and you now do it under a case that was preexisting. You had that case, and we cited the case, Georgia. It was around, and it may not even gain you. It's a very — I think it's a very dicey analysis myself, but we don't need to get into that at this point, because that's what you're alleging below. And the right way for us to handle that would be to let the district court resolve whether there's a Georgia claim and whether you assert the claim, and then we'd review that. But the question now as a procedural one is, can you reopen that judgment? That was — that went over all those years and through three levels of courts. Right. And I want to be clear on this. Georgia — our claim has — is and has always been for copyright infringement, and we have always alleged a violation of the Due Process Clause. And Georgia has been in the case from the very beginning. What do you mean has been in the case from the very beginning? Yeah. So what I mean is, in denying the defendant sovereign immunity the first time around, the district court expressly acknowledged and cited Georgia, but did not need to reach — did not need to reach that question of that period of time. But had you raised a Georgia claim in front of the district court? So there's no such thing as a Georgia claim. Sovereign immunity — Had you — I'm sorry. Had you argued that sovereign immunity had been abrogated under Georgia, sort of as applied abrogation rather than kind of prophylactic abrogation? We didn't — we didn't argue that in front of the district court.  However — Well, then, of course the district court had no need to reach it. There was no claim in front of it. Well, the reason the district court didn't need to reach it — Is because you didn't raise it. District courts don't customarily need to address claims that haven't been raised. Well, the district court specifically addressed Georgia in its decision. And it said — Okay. And it said, look, here we have — we have prophylactic abrogation. And because we have prophylactic abrogation, I don't need to go any further. Georgia also allows — Georgia also allows for case-by-case abrogation, but here we've got prophylactic abrogation. In the words of the district court, it passed on that issue. And so then when the case went up, that decision, the only thing up on appeal in front of this Court was a theory of abrogation under prophylactic abrogation. Again, I — whatever the district court might have said, the only theory that would have been properly before this Court would be the only theory that had ever been raised by the plaintiff. I just — whatever the district court did or didn't say, this claim was not raised. I have two responses. Okay. The first response is sovereign — as an affirmative defense, you have sovereign immunity. So if you looked at what claims are raised, the claim that we had was one for copyright infringement that also led to due process violation. Or in other words, the facts that support a Georgia theory were present the entire time. Okay. You're not supposed to be able to go theory by theory. Like, that's not the way the federal rules are supposed to work. That first you go with prophylactic abrogation, you run that up through the Fourth Circuit, all the way up to the Supreme Court. That proves unsuccessful. Great. Now I have a new theory. Like, that's just not how the rules are supposed to work. And — and, again, there are two — there are two reasons that kind of — that would support what has happened here. Okay. The first one is that since we filed — since that first course of procedures happened, there were additional infringements that made the Georgia violation more clear. That's why the district court granted us permission to file an amended complaint to bring that out to the court. And that's especially relevant because of the exchange that did happen at the Supreme Court, where defendants agreed that you could have a Georgia theory and agreed that the kind of conduct alleged here would support such a theory. And — I mean, they did agree that there is such a thing as a Georgia theory, but, again, that's just because it's law, and it had been well-established law. Like, I don't know what else they could have said. I mean, I just — you don't need a concession to establish the fact that there is doctrine out there. There is a Georgia case and a form of abrogation. Nobody can concede or not concede that. Yeah. So — so, really quick, it's not just that the State conceded that Georgia exists. The State conceded that wherever you have willful infringement and there's not an adequate remedy, then you can have — Yeah. Again, well-established law. I mean, I really don't know — I don't think you need — whether they had said it or not, that would be true. But — but the second reason, and I've referenced it a few times, the second response to your concern is to think of how things work in the normal course. In the normal course, you file a complaint, defendants file a motion to dismiss, and — and sometimes that complaint — that motion to dismiss is granted and the complaint is dismissed without prejudice, as it was here. When that happens, because we favor review and disposition on the merits, plaintiffs routinely have the ability to come back and say, I've — I've cured — I've cured the problem in the complaint. There's a new theory or there's a new argument that can allow us to get around the claim of sovereign immunity or any other pleading defect that existed in the first place. The only thing that's different about this case is that the defendants were entitled and did take an interlocutory appeal, and that took time. It went back up. And then the end result of that process is the case went back down. And so it's no different than if the district court had dismissed the complaint in the first place, at which point plaintiffs under Rule 15 have liberal authority to amend the complaint. And the district court here, who has broad discretion to allow those kinds of amendments, decided that it was proper and allowed in view of the exchanges at the Supreme Court, the new facts that — and the new infringements that had come into play, and the normal jurisprudence, like Foman versus Davis, favoring resolution and disposition on the merits. And so under that rubric, deficiency in the complaint, identify a solution, fix the pleading error, there's nothing unusual happening here. There's no — there's no waiver problem. There's no forfeiture. There's just a plaintiff who sees a problem in his complaint and wants to get a resolution of the merits. And this — this plays out in the way that the district court approached the analysis in the motion for reconsideration. The district court, contrary to what we heard from my friend on the other side, the district court expressly considered Rule 60. This is on JA 65 to 66. Since the parties have argued the motion based on Rule 60B principles, and since Rule 60B is a more stringent standard than that of Rule 54B, the court considers these principles in its analysis. Regardless of whether the court addresses the issue of reconsideration on the standard of Rule 60B or Rule 54B, plaintiff's request for relief is granted. And the court then continues to apply Rule 60. The court then applies Rule 54. And then the court then applies Rule 15. Now, this court, and I can tell, has some misgivings about asserting a Georgia theory and whether that would be proper. But all three of those rules are reviewed for abuse of discretion. And the district court, in this case, found that it would be appropriate to allow the claims to be amended, in part, as I mentioned before, based on the new acts of infringement that gave new life and new motivation to those claims that weren't there the first time around. And so that ought to put to rest the substantive concerns through the Rule 60, Rule 54, Rule 15 framework, even if the court is concerned about, you know, the general course, the bigger picture of how things have proceeded. I'd like to address briefly the timeline that we heard from the other side about what happened here. Because we strongly disagree that there was any sort of finality. In defendants' telling of the timeline, they missed one key event. It's true. When the case was sent back down from the Supreme Court, the district court, pursuant to this Court's mandate, dismissed the State defendants on some claims with prejudice and some claims without prejudice. At that point, there was one party left in the case. Defendant's argument is that one party was dismissed and the case was final. But there's an intervening event that happened before that stipulation of dismissal was filed. That interceding event was plaintiffs specifically sought leave from the court through a status report to file a motion for reconsideration. And when was that? That was on July 15, 2020, which was shortly after the case came back down from the Supreme Court. So there were no, and the district court expressly found this in its decision. Reconsideration of what? Reconsideration of the district court's prior decision on takings and prior dismissal of the claim for copyright infringement. There were two bases for reconsideration that were offered. So we sought reconsideration, and then the district court made a decision to hold on to, to keep the case live. It was only after the court granted permission for us to pursue our motion for leave for reconsideration that we then dismissed Friends of Queen Andrew Bench, the last party in the case. And so at that point, there was a live issue in the case. The case wasn't final. The district court did have more to do than enter judgment. The district court had to resolve, and it had decided that it wanted to resolve. What was the court's response to your motion for reconsideration? The court's, so the court said you file it under the wrong rule. It shouldn't be Rule 60 because there's no final judgment. I'm talking about this is before Friends was settled. So before Friends was settled, we just had a status report. And so the court said you have to. Was there a formal motion for reconsideration? The motion had not been filed. We had sought leave to file a motion. All right. So there was no motion. That's right. But there was a briefing schedule for the motion. And, and, well, that's a motion. Which motion? The motion to. Our anticipated motion for reconsideration. But you didn't file it. We did file it, but not until after Friends of Cunanan's revenge had been dismissed. Well, that ends the case. I mean, that's a pretty well-established principle. I respectfully. There's nothing left open when the last party is dismissed with prejudice. I respectfully disagree, because there was something left open. The district court had made a decision to hold on to the case. How did, where's that decision? That's the order granting our request for leave to file our motion for reconsideration. Well, that's post-judgment. It's. There was nothing filed. There's nothing remaining after August 17 except a final judgment. So. And so you're, you're coming in to remove that judgment to, that's what your 60B is. It had to be a judgment. 60B requires a judgment to be filed. Didn't you, didn't you seek relief from judgment under 60B? We sought relief from judgment under 60B. Okay. So you acknowledged in your motion that you're seeking relief from the judgment. And that, and that was a mistake. What did you want to file? Because even at the time that we sought. What did you want to file? A Rule 54 and a Rule 15 motion. Rule 54 is a judgment, requires it to, it's to reopen a judgment. No. Rule 60 is to reopen a judgment. Well, Rule 50 is relief, modification of a judgment, isn't it? Modification from a judgment, but not from a final judgment. So Rule 54. Well, sure it's a final judgment. No, it's. It's not an appealable judgment. The time for appeal is deferred, but it's a final judgment. It's not a final judgment because there were still friends of Queen Anne's Revenge who were still out for the case. If you file it within 28 days, it defers the appellate. It's not final in the sense it's appealable. Right. So, and there's a relevant distinction between Rule 54 and Rule 60. There's not a dispute that at the time you sought. I'm just getting back to the point that I had thought you had filed, based on what you said, you had filed a motion for reconsideration before the Friends Party were dismissed. No. No. It was after that. It was after that. We sought leave to file it. And they were dismissed with prejudice. Right. So. Then you filed a motion for reconsideration under Rule 60b-6. That's correct. Under Rule 60b-6, which the district court construed as a motion under Rule 54. But to be conservative, evaluated the motion expressly under Rule 60, then under Rule 54, then under Rule 15. And that's when you got into the Georgia stuff. And that is when we got into the Georgia stuff. After that, you asked me to try to make a claim under Georgia. Right. But even turning to the merits. So if we're going to stick with that structure, we have a judgment, and you're seeking relief from the judgment because you have a claim under Georgia that you didn't pursue earlier or that wasn't decided earlier? If there's a final judgment, we seek relief from that final judgment on the grounds that there had been additional acts of infringement. Well, now, that doesn't make sense. You know, the Supreme Court comes back and says the State is immune. The State now can use those films, whatever, because it's immune, aside from the fact that there were agreements that it could use it, which is another issue. But setting that aside, whether that's an infringement, theoretically, it's still immune from those. Right. So I wonder if there's a judgment that says they're immune. So you keep saying there's new facts because they continue to use the film. But that's not new judgment. Those are already been declared to be immune. Since my time has expired, I'll just say this briefly. It's important to parse out what the Supreme Court decided and what it didn't decide. It decided immunity, right? It decided immunity under a specific narrow theory under CERCA. Not all theories under CERCA did not make a grand pronouncement of immunity for all purposes, for all time, for all causes. The Supreme Court held defendants are immune from sovereign immunity under a prophylactic theory of abrogation under CERCA. What do you mean by prophylactic? Under a theory of abrogation. So the Copyright Remedy Clarification Act purports on its face to say there is no sovereign immunity ever for any copyright infringement. Right. And what the Supreme Court held is unconstitutional as a facial prophylactic measure. They refer to it as a prophylactic measure instead of facial in this field for some reason. It's not clear. But Georgia allows for as applied challenges. The Supreme Court did not reject that theory. The Supreme Court was actually quite receptive to it in the concerns that it expressed during the oral argument. And so there was not a pronouncement of the state is immune. There was a pronouncement of this theory that was decided by the Fourth Circuit and that was decided initially by the district court that didn't have to reach the other theory. Right. So that theory was invalid. But an alternate theory of prophylactic abrogation, which defendants admitted at the Supreme Court is valid, remains live. Can I ask just one quick question? Just the new acts of infringement. What about the new acts made them sort of better candidates for Georgia abrogation than the old acts? They were a more clear evidence of intentional infringement. So Georgia, in order, and this is detailed in our briefs. I don't know that you want to have time to answer this. I don't. Yeah. Sorry. Do you just think they were more obviously intentional is your answer? They were more. They were more flagrant. And they were more obviously intentional. Okay. Videos that the State had taken down shortly before its argument in this Court last time went right back up. Well, yeah, because they were immune. When we hold that they're immune, that doesn't make it intentional or malicious in a sense. They were relying on our decision. They were immune from copyright infringement. Yeah. That doesn't mean that the State then has free license to violate due process by infringing copyrights freely. Just because we can't sue them doesn't mean it's right to infringe, doesn't mean it's right to steal property. Well, it seems to me then, okay, I understand. Thank you. Yeah. All right. Mr. Brogue. I have three brief points on rebuttal. Judge Harris, to your question, I did not hear my friend on the other side identify a place where they had ever raised a Georgia theory in the prior proceedings in this case. And I think that makes sense because my friends conceded at the United States Supreme Court, and this is at page 32 of the oral argument transcript, that there was no Georgia claim in the case. Second, Judge Harris and Judge Niemeyer, to your questions, the civil rules do not allow parties to litigate one theory at a time. And I think that's what my friends on the other side are trying to do here. I'll flag the Omni Outdoor Advertising case from this court, which I think is somewhat similar in that a case went all the way up to the United States Supreme Court, and on remand, a party tried to introduce a new theory that they had never before raised in the case. And this court rejected that approach because, again, the civil rules don't allow litigation one theory at a time. The last point I'll just make briefly to my friend's suggestion that we had somehow conceded that a Georgia claim was viable in this case at the United States Supreme Court. We did not make any concession of that kind. We merely acknowledged the fact that Georgia is longstanding decisional law that had been on the books since 2006 and that the plaintiff here could have invoked when they originally brought this lawsuit back in 2015. Unless the Court has questions, for those reasons, we ask no questions.  Your theory for jurisdiction in this appeal is collateral order doctrine? Yes. 1291? Yes. That's what you say in your brief. Yes. So you say it's the final order. The 2024 order is an appealable order. So you say that there's a final order jurisdiction here. 1291 is the final order. Your Honor, our position is that the 2024 order is a final decision under 1291 under the collateral order doctrine, and that as a result, the 2021 order, an earlier in time procedural ruling that gave rise to the 2024 order, is thus reviewable as well at the same time. Is the theory that because it gave rise to it, it's inextricably linked? I mean, I think that's maybe one way you could get at it. I mean, I sort of have thought of it more in terms of the merger doctrine. I mean, I think my friend is incorrect to say that the merger doctrine can't apply when you have an order like this. I mean, Rule 3C. Are there any other cases where we've said the merger doctrine applies to two interlocutory orders? I'm not aware of any. I mean, it is a little bit of a strange situation. The merger doctrine is a relatively new introduction to the appellate rules. Rule 3C.4 itself does contemplate that the merger doctrine applies to a designated judgment or appealable order. And I think it is critical to my argument that we do have an appealable order. You do have an appealable order. Right. But it's not a final order. And so I am. Yeah. The collateral order doctrine is an interlocutory appeal. So you're saying you've got an interlocutory appeal and it's a final order appeal also? It's an unusual kind of appealable order because it conclusively determines that we don't have sovereign immunity. And that's why the United States Supreme Court in Puerto Rico Aqueduct held that we could take. Because immunity is from trial. Exactly. Itself. And so they've allowed it to appeal. But how we categorize. It's collateral order. And that aspect is final. But it's not final from the whole case. That's right. That's right. Okay. Thank you. All right. We'll come down and greet counsel, adjourn the court for the day. Is that the last case? Yes, Your Honor. For today. For today. This Honorable Court stands adjourned until tomorrow morning. God save the United States and this Honorable Court.
judges: Paul V. Niemeyer, Robert B. King, Pamela A. Harris